UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED

AUG 8 2008

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| TERRENCE DUBOIS STINSON, | * | CIV 07-4100 |
| | * | |
| Petitioner, | * | REPORT and RECOMMENDATION |
| | * | (Respondent's Motion to Dismiss) |
| -vs- | * | |
| | * | |
| BOB DOOLEY, Warden, | * | |
| | * | |
| Respondent. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

Petitioner, Terrence Dubois Stinson, was an inmate at the Mike Durfee State Prison when he filed his pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The docket in another of Mr. Stinson's cases (Civ. 08-4043) indicates he is currently housed at the Trustee Unit in Yankton, South Dakota. The Respondent filed an Answer (Doc. 9) and requested dismissal of the Petition. Also pending are Petitioner's Motion to Dismiss Judgment, for Monetary Relief, to be Immediately Released from Prison, to Reserve Amendment to Complaint, to Expedite Record, for Evidentiary Hearing, for Discovery, to Appoint Trial Preparation Expert (Doc. 11), and Motion to Amend Complaint to Add Parties (Doc. 14).

## JURISDICTION

The pending matter was referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Judge Piersol's Standing Order dated November 29, 2006.

## PROCEDURAL BACKGROUND

On July 11, 2001, Petitioner was convicted by a jury in the Second Judicial Circuit, Minnehaha County, South Dakota, of two counts of simple assault and two counts of aggravated assault. (*State v. Stinson, Minnehaha County, South Dakota, Second Judicial Circuit, CR 49C01-0901 A1 & A2*). On the first day of his trial, he also entered a guilty plea to one count of simple

assault. He received a sentence of twelve years imprisonment for the aggravated assault, and one hundred eighty days for the simple assault (which he had already served in the county jail by the time the trial was had). Petitioner filed a direct appeal, but his appointed counsel filed a *Korth*[1] brief indicating the only meritorious claim was an ineffective assistance of counsel claim which should properly be brought as a habeas corpus claim. Petitioner's conviction was summarily affirmed by the South Dakota Supreme Court on February 23, 2004. *See, State of South Dakota v. Stinson (# 22691).*

Petitioner filed a *pro se* State habeas corpus petition in the Second Judicial Circuit, Minnehaha County, South Dakota, (Civ. 04-1369) on June 16, 2004. The ground for relief alleged in Petitioner's State habeas petition was ineffective assistance of counsel. In his State habeas action, Petitioner claimed his trial counsel was ineffective for a variety of reasons, including the failure to object to the use of a video tape at trial, the failure to subpoena a crucial witness, failure to object to prejudicial photographic evidence at trial, and allowing Petitioner to plead guilty to the simple assault count in the indictment.

Counsel was appointed to represent Petitioner in the State habeas matter on June 16, 2004. The attorney filed an Amended Petition on April 3, 2006. The sole issue cited by Petitioner's habeas counsel in the Amended Petition was that Petitioner's trial/appellate counsel was ineffective in three ways: (1) failure to subpoena Milo Young to testify at trial; (2) failure to suppress Petitioner's post-arrest videotaped interview with law enforcement; and (3) appellate counsel's failure to raise the ineffective assistance claim on direct appeal.

Petitioner's first *pro se* Federal habeas application to this Court (Civ. 05-4075) was filed while the State habeas remained pending. Petitioner's first Federal habeas petition was dismissed without prejudice for failure to exhaust his state remedies. *See* Civ. 05-4075, Doc. 28. Thereafter, Petitioner filed a "successive" petition with the Eighth Circuit Court of Appeals (Civ. 07-1552). The

---

[1]*State v. Korth,* 650 N.W.2d 528 (S.D. 2002).

Appeals Court determined that filing was not "successive" because Petitioner's first Federal petition was dismissed for failure to exhaust. The appellate petition was likewise eventually dismissed.

On June 20, 2006, The Honorable Kathleen Caldwell, Circuit Court Judge for the Second Judicial Circuit, Minnehaha County, South Dakota, held an evidentiary hearing regarding Petitioner's State habeas claims. Thereafter, on November 17, 2006, Petitioner filed a *pro se* "Third Supplemental Amended Application For Writ of Habeas Corpus" in which Petitioner raised more *pro se* issues, bringing the total to seventy (70). The State did not file a written response to this final *pro se* petition. Judge Caldwell issued a Memorandum Opinion on January 11, 2007. She filed Findings of Fact and Conclusions of Law on March 9, 2007. On March 20, 2007, Judge Caldwell entered a Judgment and Order denying Petitioner's State habeas petition. On March 20, Judge Caldwell also denied a certificate of probable cause, which addressed the issues raised by Petitioner's attorney and briefly addressed Petitioner's seventy *pro se* issues.

On March 29, 2007, Petitioner filed two *pro se* Motions for Certificate of Probable Cause with the South Dakota Supreme Court pursuant to SDCL 21-27-18.1 and 21-27-3 (Appeal No. 24484). In those documents, he stated he did not wish to waive any of his *pro se* issues. On April 4, 2007, Petitioner's counsel filed an Amended Motion for Certificate of Probable Cause with the South Dakota Supreme Court, citing two issues. On June 15, 2007, the South Dakota Supreme Court denied Petitioner's Motion for Certificate of Probable Cause.

On July 17, 2007, Petitioner filed the instant Federal § 2254 petition. In the space provided to list the issues he wishes to raise in this petition, Petitioner refers the reader to an eight page attachment which contains a list of sixteen paragraphs. Each paragraph refers to some prior instance in which Petitioner believes he has adequately raised his habeas claims. For example: ¶ 3 "Petitioner raised issues by the filing for writ of mandamus during first direct appeal."; ¶ 8 "Petitioner raise additional issues by and through 3rd and 3rd (third continued) 'amended applications for writ of habeas corpus after receiving (1) partial discovery,(2) failing to reconvien (sic) and (3)

3

receiving falsified documentation reguarding (sic) grand jury proceedings. See settle record habeas corpus 04-1369. Also exhibits 1 (one) thru 32 (thirty-two)."

For the reasons more fully explained below, it is respectfully recommended to the District Court that Petitioner's application be dismissed with prejudice.

## FACTUAL BACKGROUND

The incident which formed the basis for Petitioner's conviction occurred in the early morning hours of February 24, 2001. On that date Petitioner and Milo Young went to Lorraine Mitchell's house and asked her to drive them around to look for Petitioner's wife (Nicky Malfero). Ms. Malfero left "detox" the previous evening, and Petitioner was unable to locate her. Ms. Mitchell described Petitioner's demeanor as "pissed off." The trio went to the Anthony and Michelle Lewis's trailer. The Lewis residence was the third place they looked, after first checking a local motel and another friend's house.

When the threesome arrived at the Lewis trailer, Lorraine Mitchell remained in her car. Young knocked on the door. The door opened. Petitioner walked in behind Young. Michelle Lewis yelled at Petitioner to get the fu** out of her home and tried to push him out the door.[2] An argument ensued about whether the Lewises knew the whereabouts of Petitioner's wife.[3] Sensing impending trouble, Young left the trailer. By the time Young returned , the incident had concluded and Petitioner was leaving the Lewis trailer.[4]

---

[2]Petitioner and Michelle Lewis both testified that their relationship had never been particularly friendly.

[3]According to Petitioner, the altercation involved Petitioner and both Lewises. Petitioner claims Michelle Lewis yelled and swung at him, while Anthony Lewis approached him with a weapon. The Lewises claim Petitioner and Michelle Lewis engaged in the altercation while Anthony Lewis sat on the couch and watched.

[4]Petitioner asserts Young witnessed the entire event. Young eventually testified at the habeas hearing, however, that he left as soon as he determined trouble was brewing. The Lewises both testified consistent with Young's version of events.

4

During the argument between Petitioner and Michelle Lewis, Petitioner broke a ceramic sugar canister from the Lewis kitchen on Michelle Lewis's face. Michelle Lewis sustained lacerations to her nose and lip. After injuring Ms. Lewis, Petitioner threw the Lewis's television set to the floor, briefly scuffled with Anthony Lewis, and then left the trailer and returned to Lorraine Mitchell's vehicle. Upon re-entering Mitchell's vehicle, Petitioner exclaimed, "I busted that bitch in the head with a cookie jar!" After the police and medical help were summoned, Anthony Lewis fled the scene because he had outstanding arrest warrants. He later returned, however, to give a statement to police. Michelle Lewis was transported to Sioux Valley Hospital, where she required sixteen stitches to repair the lacerations to her face.

Young also got back into Mitchell's vehicle. Mitchell drove Young to his own vehicle. Young told Petitioner he did not want to know what happened in the Lewis trailer. After Mitchell dropped Young off at his vehicle, Petitioner insisted that Mitchell continue to drive him around for approximately three hours. During that time, Petitioner assaulted Mitchell and stole money from her wallet. Eventually Mitchell drove Petitioner to an apartment house, where Mitchell pounded on a door until a resident came to her aid by threatening Petitioner with a hammer, causing Petitioner to flee the scene. Petitioner was arrested a few hours later. He was found sleeping at his residence on 14th Street in Sioux Falls. Petitioner waived his *Miranda* rights and agreed to give a statement to Sioux Falls Police Detective Blaine Larsen.

Petitioner told Detective Larsen that the Lewises and Lorraine Mitchell "ganged" him, so he threw a cookie jar at Michelle Lewis. Petitioner did not mention, however, that Anthony Lewis had any sort of a weapon. Petitioner admitted during the interview that he assaulted Lorraine Mitchell.

Petitioner was initially charged in a Complaint with one count of aggravated assault (Michelle Lewis) and one count of simple assault (Lorraine Mitchell). He was indicted by the grand jury on March 7, 2001, and charged with:

| Count I | Burglary in the 1st Degree |
|---------|------------------------|
| Count II | Burglary in the 1st Degree |
| Count III | Robbery in the 1st Degree (Lorraine Mitchell) |
| Count IV | Aggravated Assault with a Dangerous Weapon (Michelle Lewis) |
| Count V | Aggravated Assault–Serious Bodily Injury (Michelle Lewis) |
| Count VI | Simple Assault–Attempts, Has Ability-Felony (Michelle Lewis) |
| Count VII | Simple Assault-Causes Injury, But Not Serious-Felony (Michelle Lewis) |
| Count VIII | Simple Assault-Attempts, Has Ability-Felony (Lorraine Mitchell) |
| Count IX | Simple Assault-Causes Injury-But Not Serious-Felony (Lorraine Mitchell) |

On March 7, 2001, the State filed a Part II Information charging Petitioner with a third offense simple assault–felony. On March 12, 2001, The State filed an Amended Part II Information charging Petitioner with being a habitual criminal in violation of SDCL 22-7-7, namely, that he had committed a previous felony aggravated assault in Brown County on or about June 2, 1994.

Nicole Carper of the Minnehaha County Public Defender's Officer was appointed to represent Petitioner. Ms. Carper filed a motion for a psychiatric evaluation. On April 4, 2001, Judge Neiles ordered Dr. Michael McGrath to evaluate Petitioner to determine whether Petitioner was presently incompetent, and whether he was incompetent at the time of the alleged crimes. Shortly thereafter, Ms. Carper withdrew from Petitioner's case when she discovered her office represented a potential witness in the matter. Carmen Means from the Public Advocate's office was assigned to represent the Petitioner.

Ms. Means was aware that Milo Young was incarcerated near the time of Petitioner's trial. She believed he would remain incarcerated until trial. Young was released from jail, however, On July 4, 2001. Petitioner's trial was scheduled for July 9, 10 and 11, 2001. Means found out Petitioner's trial was the "go" trial shortly before the 4th of July holiday. She attempted to contact Young about testifying and was finally able to contact him by telephone the Saturday before the trial began (July 7th). He was evasive about his location and would not agree to meet with Means to allow her to serve him with a subpoena. Ms. Means did have some reservations about having Young testify, because the version of events as Young recited them to her was different from what Young told the police when he was interviewed by them. Young told Means that he saw Michelle Lewis come toward Petitioner, and Anthony Lewis come toward Petitioner with a pair of scissors.

The police report which memorializes Young's interview with Detective Larsen indicates Young told the Detective Michelle Lewis grabbed Petitioner and told him to get out of her house. At the habeas hearing, Young testified Lewis pushed Petitioner. Young consistently stated, however, that he left the trailer and did not witness Petitioner strike Michelle Lewis or injure her with the ceramic cannister. In his interview with police, Young made no mention of Anthony Lewis threatening Petitioner with a weapon. When Young ultimately testified at the habeas hearing, he also denied having seen anything except Michelle Lewis trying to push Petitioner out of the trailer.

On the first day of trial, Petitioner entered a plea of guilty to Count VIII (simple assault against Lorraine Mitchell) and the State dismissed Count IX (simple assault against Lorraine Mitchell). Petitioner testified in his own defense at trial. The videotape of his interview with Detective Larsen was shown to the jury. Petitioner was convicted of Counts IV, V, VI and VII of the Indictment. The State dismissed the remaining Counts (I, II, III, and VIIII).

Petitioner became dissatisfied with the services of his trial counsel. He moved for appointment of new counsel during a September 6, 2001 hearing on his motion for new trial. Judge Neiles appointed new counsel (Doug Thesenvitz). A hearing on Petitioner's motion for new trial was held on October 3, 2001. Means testified at the hearing regarding her representation of Petitioner. During that hearing, it was revealed that the State attempted to subpoena Milo Young for Petitioner's trial, but was unsuccessful. Judge Neiles denied Petitioner's motion for new trial.

Petitioner made a motion to withdraw his guilty plea to the simple assault charge on February 12, 2002. He also moved to strike the prior (1994) offense from the Part II Habitual Offense Information. Petitioner also moved to remove Attorney Thesenvitz as his counsel. Judge Neiles denied Petitioner's motion to remove Thesenvitz as his counsel. During a March 12, 2002 motions hearing, Petitioner argued that the sole conviction cited in the Part II Information (the 1994 Brown County aggravated assault) was invalid because Judge Dobberpuhl's recitation of the *Boykin*[5] rights

---

[5]*Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969).

was insufficient. Judge Neiles agreed and the Habitual Offender charge was dismissed. Petitioner also raised a claim regarding the psychiatric evaluation which had been ordered, but no results were on file.

In May, 2002, Petitioner again requested a change of attorney, because Thesenvitz realized he had previously participated in prosecuting Petitioner on a misdemeanor charge in 1997. In 1997, Thesenvitz was employed by the States Attorney's office. Thesenvitz discovered his involvement in the previous prosecution as he reviewed Petitioner's prior conviction information in preparation for the Habitual Offender hearing. Neither he nor Petitioner could specifically recall Thesenvitz's involvement. Judge Neiles found that while no actual conflict existed, the motion should be granted.

Judge Neiles appointed Petitioner's fourth attorney, Rhonda Lockwood. On July 31, 2002, Attorney Lockwood made a motion for new trial, motion set aside the verdict, and motion to withdraw the guilty plea. During this hearing, Dr. McGrath appeared and testified that he met with Petitioner on April 21, 2001, and found him competent. No report, however, was ever prepared. Milo Young was subpoenaed to appear at the July 31, 2002 hearing. He failed to appear. Judge Neiles denied Petitioner's motions .

Judge Neiles sentenced Petitioner on December 2, 2002. Judge Neiles sentenced Petitioner to twelve years imprisonment for Count V (aggravated assault) and 180 days in the county jail for Count VIII (simple assault). He received no sentence as to Counts IV, V, VI, and VII, because those counts were alternative to the counts for which he did receive a sentence. The remaining counts and both Part II Informations were dismissed.

## DISCUSSION

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The federal courts are constrained, however by the Anti-Terrorism and Effective Death Penalty Act (AEDPA), to exercise only a "limited and deferential review of underlying state court decisions." *Osborne v.*

*Purkett,* 411 F.3d 911, 914 (8th Cir. 2005). A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in Supreme Court cases or if it confronts a set of facts that are materially indistinguishable from a decision of the Court and nevertheless arrives at a result different from the Court's precedent.*"* *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.C. 1495, 146 L.Ed.2d 389 (2000).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met. *Thatsaphone v. Weber*, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e). A federal habeas court "may not simply disagree with the state court's factual determinations. Instead it must conclude that the state court's findings lacked even fair support in the record." *Marshall v. Lonberger*, 459 U.S. 422, 432, 103 S.C. 843, 850, 74 L.Ed.2d 646 (1983). A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly. *Id.* at 411, 120 S.C. at 1495. "Rather, that application must also be *unreasonable*." Id. (emphasis added).

The federal courts' review of state courts decisions is limited in another way: "the law of this circuit requires that an applicant for a writ of habeas corpus refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue in state court" before it will evaluate a claim. *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004) (citations omitted, punctuation altered). A petitioner's failure to exhaust in the state courts a claim which does not state a federal constitutional claim, cognizable in federal habeas proceedings, does "not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal constitution." *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986) (citations omitted). *See also Hall v. Iowa*, 705 F.2d 283, 286 (8th Cir. 1983)("Nonexhausted state claims included in a federal habeas petition and having no constitutional

relevance should not deprive a federal district court of the right to entertain other exhausted claims which do have their roots under the federal Constitution."). Also, a "stay and abeyance" procedure may be appropriate if a petitioner presents a petition "mixed" with exhausted and unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005). No stay and abeyance is necessary, however, and dismissal is appropriate if the unexhausted claims are "plainly meritless." *Id.;* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

Finally, the Eighth Circuit has noted federal review of ineffective assistance claims in § 2254 petitions is particularly deferential: "Our review under 28 U.S.C. § 2254 of a state court's application of *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984) is twice deferential: we apply a highly deferential review to the state court decision; the state court, in turn, is highly deferential to the judgments of trial counsel." *Nooner v. Norris*, 402 F.3d 801, 808 (8th Cir. 2005) *cert. den.* 126 S.Ct. 2037, 164 L.Ed.2d 794 (2006).

Given the manner in which Petitioner has chosen to present his Federal habeas claims, it is difficult to decipher exactly which claims he wishes to pursue. Those claims which were explicitly discussed by the State court in Judge Caldwell's written decision will be addressed first:

**Petitioner's First Claim For Relief:**
Whether Petitioner's trial counsel was ineffective for failure to subpoena Milo Young to testify at trial?

Judge Caldwell found Petitioner's trial counsel was not ineffective for failing to subpoena Young, and even if trial counsel's representation was deficient, Petitioner failed to show Young's testimony would have affected the outcome of the trial.

To establish an ineffective assistance of counsel claim, Petitioner must (1) establish counsel's representation fell below an objective standard of reasonableness and (2) show the deficient

10

performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.C. 2052, 80 L.Ed.2d 674 (1984). To demonstrate prejudice, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.C. at 2052. The Court must begin by presuming trial counsel was effective, and strategic choices are entitled to great deference. *Boyd v. Minnesota*, 274 F.3d 497, 502 (8th Cir. 2001).

Petitioner's trial counsel testified several times throughout the course of this matter. She explained that she was hesitant to put Milo Young on the witness stand because she thought he had credibility problems. He told the police one story (that he saw nothing except Michelle Lewis try to push Petitioner out of the trailer) but told her a different story (that both Lewises came after Petitioner and that Anthony Lewis brandished a weapon). She knew Young was very impeachable, because he had a "pretty awful" criminal history. Nevertheless, she decided to use Young as a witness because he did support Petitioner's self-defense theory. She believed he would be accessible because he was in jail. Young was released from jail, however, shortly before Petitioner's trial. She was able to interview Young by telephone, but he refused to disclose his location. He agreed to appear at trial, but he did not. Young was later subpoenaed to testify at a post-trial motion hearing, but failed to obey the subpoena. When he finally testified at the habeas hearing (he was again incarcerated at the time, so he did not have the option to disobey the subpoena) he recanted the story he previously told trial counsel and reverted to the version he told the police.

Trial counsel's failure to subpoena Young to testify at trial did not fall below the objective standard of reasonableness. Counsel did not know for sure when the case would go to trial until shortly before the 4th of July holiday. Young was released on July 4th. Counsel could not serve Mr. Young with a subpoena until she knew when the case would go to trial. She believed Milo Young would remain incarcerated throughout Petitioner's trial, but as soon as she discovered Young had been released, she attempted to locate him. She reached him by telephone on July 7th, but he refused to disclose his location. He promised to appear for trial, but did not.

11

If trial counsel had subpoenaed Milo Young, it is questionable whether Young would have appeared at trial. Young demonstrated his willingness to disregard a subpoena when he failed to appear after being served with a subpoena for a motion hearing on July 31, 2002. Young's testimony was highly impeachable because of his previous inconsistent statement to the police and because of his prior criminal history. Even assuming Young appeared and testified to the version of the story he told trial counsel (i.e. that Anthony Lewis was involved in the altercation and brandished a weapon), therefore, it cannot be assumed with any certainty that his testimony would have changed the outcome of Petitioner's trial.

"It is all to tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all to easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.C. 2052, 2065, 80 L.Ed.2d 674 (1984). Petitioner's disagreement with his trial counsel's strategic decisions do not entitle him to habeas relief unless trial counsel's performance was objectively unreasonable. The Court has carefully reviewed the trial transcript, the habeas transcript, the various other transcripts from the state criminal action, and the state habeas decision. For Petitioner to succeed, he "must do more than show he would have satisfied *Strickland's* test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. . . .Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell v. Cone*, 535 U.S. 685, 698-99, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

Judge Caldwell found that trial counsel's representation of Petitioner did not fall below an objective standard of reasonableness, and Petitioner was not prejudiced by counsel's failure to subpoena Young. She further found that Petitioner failed to show that Young's testimony would have affected the outcome of the trial. The state court's finding that Petitioner was not denied effective assistance of counsel is not contrary to and does not involve an unreasonable application

of clearly established federal law. It is respectfully recommended to the District Court that Petitioner's application be DENIED on its merits as to the first claim for relief.

**Petitioner's Second Claim For Relief:**

Whether Petitioner's trial counsel was ineffective for failure to pursue a motion to suppress the video taped interview with Detective Larsen?

Judge Caldwell found Petitioner's trial counsel was not ineffective for failing to move to suppress the interview, and that Petitioner failed to show that he was prejudiced by any ineffectiveness.

Petitioner and his trial counsel testified during the habeas hearing about Petitioner's video taped interview. Trial counsel explained that she reviewed the tape. She acknowledged that Petitioner gave the statement after a "long binge" of using drugs and after very little sleep, but she was satisfied that there was no basis to suppress Petitioner's statements. She also decided she wanted to introduce the tape into evidence for strategic reasons. She wanted to emphasize that Petitioner admitted to the crimes that he did commit (the assault on Lorraine Mitchell) but told the truth about things he did not do (the assault on Michelle Lewis).

Petitioner testified that his trial counsel never discussed the police interview with him. He denied that he ever discussed allowing the video of the interview to be shown to the jury as a part of any trial strategy. Petitioner claimed the interview occurred at about 1:30 or 2:00 in the afternoon on February 24th. He had "very little" sleep before the interview, because after the incident with Michelle Lewis and Lorraine Mitchell concluded (about 7:00 a.m.) he drank a six-pack of Colt 45, smoked two joints, and went back to his house at about 11:00 a.m or noon to lay down. Petitioner acknowledged that Detective Larsen "probably did" inform him of his *Miranda* rights, but Petitioner claimed he "mentally wasn't there" because he was tired and upset about his wife. He asserted he did not understand that what he told the police officer could be used against him later on.

Detective Larsen testified about the interview during the criminal trial. He described Petitioner's demeanor upon arrest as calm, cooperative and decent. Larsen advised Petitioner he was

13

under arrest, advised Petitioner of his *Miranda* rights and proceeded with the interview. After the *Miranda* advisement, Petitioner said "o.k. are you ready?" Other than Petitioner's low tone of voice and smoking during the interview, Larsen had no problem understanding him.

Petitioner's claim amounts to an assertion that his counsel should have moved to suppress his confession because it was involuntary/unintelligently made. A suspect may waive his Fifth Amendment privilege "provided the waiver is made voluntarily, knowingly and intelligently." *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987). To meet this requirement, the waiver must have been made "with a full awareness both of the nature of the right being abandoned and of the consequences of the decision to abandon it." *Id.* That the waiver must be made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it "does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574, 107 S.Ct. at 857. Rather, the inquiry is much simpler: did the suspect understand his basic privileges guaranteed by the Fifth Amendment, and the consequences of speaking freely to law enforcement officers? *Id.* 479 U.S. at 574-75, 107 S.Ct. at 857-58.

Petitioner asserts his lack of sleep and intoxication rendered him unable to concentrate or understand and therefore he did not knowingly and intelligently waive his Fifth Amendment rights. The Eighth Circuit and other courts have declined to adopt a *per se* rule in this regard. *United States v. Turner*, 157 F.3d 552, 555-56 (8th Cir. 1998). In *Turner*, the Court rejected the defendant's claim that his waiver was not knowing and intelligent because he was impaired by a low IQ, drug intoxication, and mental illness. In doing so, the Court noted the defendant's borderline intelligence but that he was clearly intelligent enough to understand his rights. *Id.* at 555. The officer who took his statement testified the defendant gave accurate information. *Id.* And the Court explained that even if he was under the influence of PCP as he claimed, the evidence showed that he nevertheless was capable of understanding and knowingly waiving his rights. *Id.* at 556. *See also, United States v. Makes Room For Them*, 49 F.3d 410, 414 (8th Cir. 1995); *United States v. Casal*, 915 F.2d 1225 (8th Cir. 1990). Case law doesn't clearly describe when a suspect "crosses the line" and becomes too

14

incoherent to comprehend his rights and the consequences of waiving them. The Fifth Circuit tried to explain it in *United States v. Martin*, 434 F.2d 275 (5th Cir. 1970).

> A confession otherwise voluntary is not to be excluded because the accused was intoxicated when he made it. The fact that the confessor was intoxicated is a circumstance affecting its credibility, and is to be considered by the jury.

> If the intoxication of the confessor produced actual mania, or rendered the confessor unconscious of what he was saying, his confession is inadmissible. However, the fact that the accused had but recently recovered from delirium tremens will not render his confession inadmissible.

> The fact that the defendant was intoxicated when he confessed is immaterial if he had sufficient mental capacity at the time to know what he was saying and to have voluntarily intended it.

*Id.* at 278 (*quoting* 2 Wharton's Criminal Evidence (12th Ed. p. 122, 388)(other citations omitted). *See also*, *Custodio v. Fisher*, 2007 WL 2819313 (D. Idaho) (relevant inquiry is whether suspect had requisite level of comprehension from totality of the circumstances); *United States v. Simmons*, 526 F.Supp.2d 557 (E.D. N.C.) (Court analyzes suspect's intelligence, education, age and familiarity with the justice system, when suspect claims mental impairment from drugs or alcohol, courts apply a test of coherence, of an understanding of what is happening in determining the validity of waivers); *United States v. Cellemme*, 431 F.Supp. 731 (D.C. Mass. 1977) (court carefully sifts through evidence to determine whether suspect was intoxicated and if so, whether as a result of his intoxication and the totality of the circumstances the confession most probably was not the product of any meaningful act of volition).

 

The Court has independently reviewed Petitioner's taped interview with Detective Larsen.[6] While Petitioner was obviously tired during the interview he was coherent and engaged. When Larsen asked Petitioner if he understood his *Miranda* rights, Petitioner said "yes sir." When Larsen asked if Petitioner wished to waive his rights and talk to Larsen, Petitioner waited a few moments, then looked at Larsen and said, "you ready?" Petitioner corrected Detective Larsen if Larsen made a statement with which Petitioner did not agree. Petitioner was able to provide Larsen with details of the incident (for example, the plate he threw at Anthony Lewis was plastic, while the cookie jar

---

[6]The tape was not included in the materials provided by the Respondent, but the Minnehaha County Clerk of Courts provided it upon request.

15

which struck Michelle Lewis was ceramic). He recalled that the first stop he, Young and Mitchell made after they left the Lewis trailer was in the 800 block of West 12th Street. Petitioner admitted hitting Lorraine Mitchell, but vehemently denied taking any money from her. Petitioner was aware of what he was saying, the nature of his rights and the consequences of waiving them. He recalled the details of the incident, albeit in a tired, somewhat slow recitation. Despite his lack of sleep and claimed intoxication, the behavior Petitioner exhibits on the tape demonstrates the decision to waive his constitutional rights was knowing and intelligent. *Colorado v. Spring,* 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954 (1987).

Trial counsel's strategic reasoning for not redacting that portion of the tape in which Petitioner discusses the assault of Lorraine Mitchell (to which he entered a guilty plea) has also been considered. Counsel explained her strategy: she wanted the jury to understand that Petitioner admitted when he did something wrong so that his claim that he assaulted Michelle Lewis in self-defense would be more credible. A reviewing court must be "highly deferential" in deciding whether trial counsel's decisions were sound strategy versus prejudicial error. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. I must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In other words, Petitioner bears the burden to show "his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Marcrum v. Luebbers,* 509 F.3d 489, 502 (8th Cir. 2007), *citing Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). Petitioner has not met his burden.

The State court's finding that Petitioner was not denied effective assistance of counsel is not contrary to and does not involve an unreasonable application of clearly established federal law. It is respectfully recommended to the District Court that Petitioner's application be DENIED on its merits as to the second claim for relief.

**Petitioner's Third Claim For Relief:**

16

Whether Petitioner's appellate counsel was ineffective for failure raise ineffective assistance of counsel as an issue on direct appeal?

Judge Caldwell found that Petitioner's appellate counsel was not ineffective for failing to raise ineffective assistance of counsel on direct appeal because according to South Dakota law, such claims are properly brought through habeas corpus actions.

In South Dakota, "the preferable means to consider incompetent counsel claims is through habeas corpus proceedings." *State v. Aliberti*, 401 N.W.2d 729, 732 (S.D. 1987). Ineffective assistance claims are allowed on direct appeal "only when the representation was so casual that the trial record evidences a manifest usurpation of [the defendant'] constitutional rights." *State v. Jett*, 474 N.W.2d 741, 743 (S.D. 1991). The South Dakota courts have determined that it is only through the habeas corpus proceeding that a sufficient record can be made to allow appropriate review. *Id.* at 743.

The Eighth Circuit is in accord. *See United States v. Looking Cloud*, 419 F.3d 781, 788 (8th Cir. 2005) (appellate court will not consider ineffective assistance claims on direct appeal because such claims require development of facts outside the record and are more appropriately raised in a habeas proceeding). Judge Caldwell determined trial counsel's representation was "not so casual that the trial record evidences a manifest usurpation of [defendant's] constitutional rights." After reviewing the trial transcripts, the Court finds Petitioner has failed to present clear and convincing evidence that Judge Caldwell's factual finding is incorrect. The State court's finding is not contrary to and does not  involve  an unreasonable application of clearly established federal law. It is respectfully recommended to the District Court that Petitioner's application  be DENIED on its merits as to the third claim for relief.

### Petitioner's *Pro Se* Claims For Relief

Petitioner asserts he has raised seventy *pro se* issues. He has not clearly recited these issues in his Federal § 2254 application, but instead refers to the Court to his previous State filings.

17

It is noted at the outset that by simply referring to his eight page attachment (which in turn refers to a myriad of other documents filed in his State habeas proceeding) Petitioner utterly failed to comply with the instructions on the § 2254 form with which he was provided and Rule 2, Section 2254 Cases. Both the form and the Rule require Federal habeas applicants to specify (1) the grounds upon which they are seeking relief and (2) the facts supporting each ground. A list of previously filed State-court documents does not adequately apprise this Court of either the grounds upon which Petitioner claims he is being held in violation of the Constitution, laws or treaties of the United States or the facts supporting each ground.

> Although *pro se* petitions are to be liberally construed as set forth in *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), habeas petitioners must meet heightened pleading requirements. *McFarland v. Scott*, 512 U.S. 849, 114 S.Ct. 2568, 129 L.Ed.2d 666 (1994). 'Notice pleading is not sufficient, for the petition is expected to state facts that point to a real possibility of constitutional error.' *Blackledge v. Allison*, 431 U.S. 63, 75, n. 7, 97 S.Ct. 1621, 52 L.E.d2d 136 (1977). A habeas petitioner must come forth with evidence that a claim has merit. *Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992). Unsupported, conclusory allegations do not entitle a habeas petitioner to relief.

*Mineer v. Waid*, 2008 WL 713836 (N.D.W.Va. 2008). It is insufficient for a Petitioner to merely "characterize some state act as unconstitutional and expect the court to explore all possible grounds under each article and amendment of the Constitution. While courts should liberally interpret *pro se* pleadings with leniency and understanding, this should not place on the reviewing court the entire onus of creating a federal claim for the petitioner." *McCartney v. Director, Dept. Of Corrections*, 2007 WL 586795 (E.D.Cal. 2007). District Court judges are not required to "divine the point" a *pro se* petitioner wishes to make through attached documents or scribbled notes rather than specific "allegations that if true would tend to show [he] is being held in violation of the Constitution or federal laws." *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993).

Despite the above-cited authority, the Court has searched the State court habeas record for issues to which Petitioner even remotely referred in a non-conclusory manner about a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent constitutional issue. *Ford v. Norris*, 364 F.3d 916, 919 (8th Cir. 2004).

The majority of the claims raised in Petitioner's State *pro se* habeas papers are wholly conclusory and do not merit discussion. Typical is Petitioner's thirtieth claim for relief in his "3rd Supplemental Amended Application for Writ of Habeas Corpus" which states: "Applicant/Petitioner rights under the Due Process Provision of the United States Constitution (5th, 6th, and 14th Amendments) and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated by Prosecutors improper arguments at trial."   Petitioner does not elaborate nor provide any legal or factual basis for this claim. Most if not all of the claims articulated by Petitioner follow this same pattern.

Although he believes he has stated seventy separate claims for relief, Petitioner restates the same claim several times in different ways (usually in the form of an ineffective assistance claim against one or more of the six lawyers who have represented him throughout the course of this matter). Those claims which Petitioner has stated most frequently and/or which even arguably have their basis in a violation of constitutional law are briefly discussed below:

**Petitioner's First *Pro Se* Claim:**

Applicant/Petitioner's rights under the Due Process and right to counsel provisions of the United States Constitution (Fifth, Sixth and Fourteenth Amendments and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated because counsel's representation fell below and (sic) objective standard of reasonableness and his case was prejudiced thereby, Petitioner alleges the following specific grounds of the denial of effective assistance of counsel:

(A)     Nicole Carper 1st attorney of record failed to object at arraignment without applicant/petitioner ever having been given a preliminary on additional or new charges in violation of state statute and procedure on this date March 12, 2001. [7]

The right to a preliminary hearing is statutory, not Constitutional and  a preliminary hearing need not be held if the Defendant is indicted before the date set for the preliminary hearing, pursuant

---

[7]This claim appears as the fourteenth claim for relief in Petitioner's "3rd Supplemental Amended  Application For Writ of Habeas Corpus." It also appears in various places  in his original and amended *pro se* Applications.

to SDCL §§ 23A-4-3. No preliminary hearing was required to be held on the "new" charges, therefore, because Petitioner by then had been indicted by the grand jury.

Federal law mirrors South Dakota law. Once a defendant is indicted, the right to a preliminary examination evaporates. *See* Fed. R. Crim. P. 5.1. That Petitioner did not receive a preliminary examination, therefore, is of no legal consequence. To the extent Petitioner complains about any technical defect in the grand jury proceedings, this too fails to rise to a Constitutional violation which justifies habeas relief. *See, United States v. Mechanik*, 475 U.S. 66, 72, 106 S.C. 938, 942-43, 89 L.Ed.2d 50 (1986) (guilty verdict at trial renders harmless "any conceivable error in the charging decision that flowed from" a violation of Fed. R. Crim. P. 6(d)). In *Mechanik*, the United States Supreme Court explained, "[i]n such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings." *Id.* *See also*, Fed. R. Crim. P. 6(e)(1) (". . but the validity of a prosecution is not affected by the unintentional failure to make a recording . . .").

Judge Caldwell's summary dismissal of Petitioner's *pro se* claim for relief based on the failure to hold a preliminary examination after he was indicted was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to the this claim.

### Petitioner's Second *Pro Se* Claim

Applicant/Petitioner's rights under the Due Process and right to counsel provisions of the United States Constitution (Fifth , Sixth and Fourteenth Amendments and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated because counsel's representation fell below and (sic) objective standard of reasonableness and his case was prejudiced thereby, Petitioner alleges the following specific grounds of the denial of effective assistance of counsel:

(F)     Nicole Carper 1st attorney of record failed to object to arraignment on March 12, 2001 having not appeared at grand jury proceedings on behalf of petitioner/applicant.

20

(J)  Nicole Carper 1st attorney of record failed to object to applicant/petitioner not allowed to appear at grand jury proceedings or knowledge thereof while detained.[8]

This claim is easily dispatched. South Dakota law provides for confidentiality of grand jury proceedings and limits who may be present during testimony and deliberations. Neither Petitioner nor his counsel were entitled to attend. *See* SDCL § 23A-5-11. That statute mirrors Fed. R.Crim. P. 6(d) and provides:

> Prosecuting attorneys may at all times appear before the grand jury for the purpose of giving information or advice or interrogating witnesses relative to any matter cognizable by it. Prosecuting attorneys, the witness under examination and his counsel, interpreters if needed, the victim under examination and the victim or witness assistant and, for the purpose of taking the evidence if authorized by the grand jury, a stenographer or operator of a recording device may be present when the grand jury is in session, but no person other than the jurors may be present while the grand jury is deliberating or voting. The role of counsel appearing with a witness shall be limited to advising the witness. The prosecuting attorney may not be present during the consideration of any charge against himself, except that the grand jury may summon him as a witness.

The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

Petitioner did have a Sixth Amendment right to counsel and to confront witnesses against him, but not during grand jury proceedings.

Judge Caldwell's summary dismissal of Petitioner's *pro se* claim for relief based on Petitioner's counsel's failure to appear on his behalf at the grand jury proceedings or to object to Petitioner's own non-appearance at the grand jury proceedings was not contrary to and did not

---

[8]These appear as sub-parts to Petitioner's fourteenth ground for relief in his "3[rd] Supplemental Amended Application for Writ of Habeas Corpus."

involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to the this claim.

### Petitioner's Third *Pro Se* Claim:

Applicant/Petitioner's rights under the Due Process and right to counsel provisions of the United States Constitution (Fifth, Sixth and Fourteenth Amendments and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated because counsel's representation fell below and (sic) objective standard of reasonableness and his case was prejudiced thereby, Petitioner alleges the following specific grounds of the denial of effective assistance of counsel:

(W)    Nicole Carper 1st attorney of record failed to file "Motion to Suppression" after warrantless arrest of applicant/petitioner.[9]

The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath and affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment prohibits unreasonable searches and seizures, but it does not prohibit warrantless searches and seizures. *United States v. Hudspeth*, 518 F.3d 954, 961 (8th Cir. 2008), *citing, Illinois v. Rodriguez*, 497 U.S. 177, 183, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). There is no basis to suppress Petitioner's warrantless arrest, therefore, unless it was unreasonable under the Fourth Amendment.

"An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *United States v. Davidson*, 527 F.3d 703, 706 (8th Cir. 2008) (citation omitted). A review of Petitioner's interview reveals that when Detective Larsen arrested Petitioner, Larsen had received reports from both Lorraine Mitchell and Michelle Lewis naming Petitioner as

---

[9]This appears as a sub-part to Petitioner's fourteenth ground for relief in his "3rd Supplemental Amended Application for Writ of Habeas Corpus."

the person who assaulted them and that their injuries had been verified. Under the circumstances a reasonable person would have believed that Petitioner committed the offense, so the officer had probable cause for the warrantless arrest. No Fourth Amendment violation occurred.

Judge Caldwell's summary dismissal of Petitioner's *pro se* claim for relief based on Petitioner's assertion that counsel was ineffective for failing to file a motion to suppress because Petitioner was arrested without a warrant was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to this claim.

**Petitioner's Fourth *Pro Se* Claim:**
Court erred in jury <u>not</u> being of applicants peers and all white.[10]

It is apparent from reading the police reports and watching Petitioner's video-taped interview with Detective Larsen that Petitioner is African American. He asserts constitutional error because he was convicted by an all-white jury. It is unclear from his submissions whether any African Americans were on the jury panel.

The Sixth Amendment guarantees a criminal jury "composed of a fair cross-section of the community." *Wharton-El v. Nix*, 38 F.3d 372, 376 (8th Cir. 1994). Petitioner must establish the following to show a violation of his Sixth Amendment guarantee to a jury composed of a fair cross section of the community: (1) that African Americans are a distinctive group in the community;[11] (2) that the representation of African Americans in jury pools is not fair and reasonable in relation to the number of African Americans in the community; and (3) that this under representation is due

---

[10]This claim appears as claim No. 13 in Petitioner's original *pro se* Application, as well as in various forms in his amended and 3rd amended *pro se* Applications.

[11]According to the U.S. Census Bureau, www.factfinder.census.gov, 1.5% of the population of Minnehaha County, South Dakota listed their race as "black or African American" in the year 2000 (the most recent statistics available–and fairly close in time to when Petitioner's trial occurred in July, 2001).

to systematic exclusion of African Americans in the jury selection process. *Id.* (citations omitted). Petitioner has made none of these showings. As in *Wharton-El*, Petitioner has "simply shown that no African Americans sat on his jury." *Id.* at 376. Absent some further showing, the Court "cannot conclude that a systematic exclusion occurred or that [Petitioner's] right to an impartial jury was violated."

Judge Caldwell's summary dismissal of Petitioner's *pro se* claim for relief based on Petitioner's assertion he was denied a fair trial by a jury of his peers pursuant to the Sixth Amendment was was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to this claim.

**Petitioner's Fifth *Pro Se* Claim:**

Applicant/Petitioner's rights under the Due Process and right to counsel provisions of the United States Constitution (Fifth, Sixth and Fourteenth Amendments and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated because counsel's representation fell below and (sic) objective standard of reasonableness and his case was prejudiced thereby, Petitioner alleges the following specific grounds of the denial of effective assistance of counsel:

(Q)    Carmen Means 2nd attorney of record failed to hold hearing on competency or request said hearing where competency in question.[12]

The basis for this claim is Petitioner's belief that because his first lawyer made a motion for a psychiatric evaluation, he should not have been allowed to enter a guilty plea or stand trial absent a written report pronouncing him competent.

Judge Neiles entered an Order stating that Petitioner "shall be examined by Dr. Michael McGrath" for the purpose of determining whether Petitioner was presently suffering from a mental disease or defect and whether at the time of the offense he was capable of knowing the wrongfulness

---

[12]This claim is raised in the Fifteenth claim for relief in Petitioner's "3rd Supplemental Amended Application for Writ of Habeas Corpus." Petitioner raised the failure of his attorney(s) to follow through with his first attorney's motion for a competency evaluation throughout all of his *pro se* Petitions. He asserts he should not have been allowed to plead guilty or to proceed to trial without having the competency evaluation results in his file.

of the alleged acts. There was no further mention of the psychiatric evaluation until after Petitioner's trial. Petitioner raised the competency issue afer his conviction, when attorney Lockwood (Petitioner's fourth appointed lawyer) could not locate a report from Dr. McGrath in trial counsel's file.

A criminal defendant may not stand trial unless he is competent. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). A defendant may not waive his right to counsel or plead guilty unless he does so competently and intelligently. *Johnson v. Zerbst*, 304 U.S. 458, 468, 58 S.Ct. 1019, 1025, 82 L.Ed.2d 1461 (1938). In *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) *(per curium)* the United States Supreme Court defined the standard for competence to stand trial: whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." The standard for competence to plead guilty or to waive the right to counsel is the same as for standing trial. *Godinez v. Moran*, 509 U.S. 389, 113 S.Ct. 2680, 125 L.Ed.2d 321.

Petitioner's competency and Dr. McGrath's missing report were discussed during the motions hearing on July 31, 2002. Petitioner's trial counsel (Means) testified it was her recollection that she visited with Petitioner's first lawyer (Carper) about the competency issue. Carper requested the evaluation and had it performed upon Petitioner. Carper spoke with Dr. McGrath, who informed Carper that Petitioner was competent and that McGrath "didn't really have anything to offer the defense in terms of a mental illness defense so she had not had him write up the report." This conversation between the lawyers occurred in passing in the courthouse and there is no record of it. Means did not discuss the competency issue with Petitioner because she did not have any difficulty conversing with him, didn't have any concerns about his competency, and the issue just didn't come up. The only issue in her mind about Petitioner's behavior the night of the crime was that it was clear to her that Petitioner and Michelle Lewis had never gotten along. Michelle was not the type to back down, and typically when Petitioner was angry and you didn't try to "smooth things over" that would "cause him to explode."

25

Dr. Michael McGrath testified that he visited Petitioner in jail on April 21, 2001 to perform a competency evaluation. He generally prepares a report to summarize his findings whether he finds his subjects competent or not competent. He did not prepare a report to summarize his findings in this case. He believes somebody may have called him to discuss his findings, but he could not remember for sure. He does recall, however, that he formed an opinion that Petitioner was in fact competent.

Because the testimony from Ms. Means and Dr. McGrath reveals that Petitioner was competent at the time of the offense, to stand trial, and to enter a guilty plea, Dr. McGrath's failure to produce a report pursuant to Judge Neiles' does not rise to the level of constitutional error. While a written report would have made for a much cleaner record, the absence of a report did not render Petitioner unable to consult with his lawyer with a reasonable degree of rational understanding nor did it impair his rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (*per curium*).

Judge Caldwell's summary dismissal of Petitioner's *pro se* claim for relief based on Petitioner's assertion that he was not competent was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to this claim.

### Petitioner's Sixth *Pro Se* Claim:

Applicant/Petitioner's rights under the Due Process and right to counsel provisions of the United States Constitution (Fifth ,Sixth and Fourteenth Amendments and the South Dakota Constitution (Art. VI §§ 2 and 7) were violated because counsel's representation fell below and (sic) objective standard of reasonableness and his case was prejudiced thereby, Petitioner alleges the following specific grounds of the denial of effective assistance of counsel:

(F)     Rhonda Lockwood failed to object at sentencing the failure to allow applicant/petitioner to review presentence report.[13]

Petitioner's sentencing hearing occurred on December 2, 2002. The presentence report was discussed quite extensively by both the prosecutor and Petitioner's counsel throughout the course of the hearing. Petitioner's counsel mentioned items in the report which she had discussed with Petitioner. Petitioner was given the opportunity to speak during the hearing, but he did not claim at that time that he had not been given the chance to review the report or that any of the prior convictions reported in the PSI were incorrect.

While South Dakota law requires disclosure of the pre-sentence report to the defendant before sentence is imposed, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.C. 871, 875, 79 L.Ed.2d 29 (1984). There is no indication Petitioner's sentence would have been different even if Petitioner had reviewed his pre-sentence investigation before sentence was imposed. In other words, no prejudice resulted from the error. No due process violation arises in the absence of a showing of prejudice. *Donnelly v. DeChistoforo*, 416 U.S. 637, 648, 94 S.C. 1868, 1873, 40 L.Ed.2d 431 (1974); *Pickens v. Lockhart*, 4 F.3d 1446, 1453-54 (8th Cir. 1993). *See also United States v. Esparza-Gonzalez*, 268 F.3d 272, 274 (5th Cir. 2001) (regarding similar Fed. R. Crim. P. 32(c)) "remanding where no prejudice exists would require the district court to undergo an exercise in futility in order to obtain the same sentence.").

Judge Caldwell's summary dismissal of this Petitioner's *pro se* claim for relief based on Petitioner's assertion that his right to Due Process and/or effective assistance of counsel was denied because he allegedly did not review his PSI was was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to this claim.

_____

[13]This claim is raised in Petitioner's "Supplemental Brief" to his original Application and in the Seventeenth Claim for Relief of his "3rd Supplemental Amended Application for Writ of Habeas Corpus."

**Petitioner's Seventh *Pro Se* Claim:**

Counsel erred by failing to object to "prosecutorial misconduct" consisting of dropping active warrants against testifying witness for the state whom fled scene of alleged crime and failed to disclose to jury active personal interest with all witnesses for state being drug informers.[14]

Petitioner asserts Michelle and Anthony Lewis and Lorraine Mitchell were all confidential drug informants for the prosecution and offered inducements to testify against him at trial. He has produced no evidence to substantiate this claim. Anthony Lewis testified at trial that he fled the scene on the evening of the incident because he had an outstanding warrant for unpaid fines. He also testified, however, that he was not arrested on the warrant because as of the date of the trial he paid the fines.

Petitioner's trial counsel testified at the habeas hearing about Petitioner's theory that Michelle Lewis/and or Lorraine Mitchell were a confidential drug informants for the State. Means explained that she did not believe whether the women were confidential informants was especially relevant to the assault charges against Petitioner, and even if true, she did not believe it was anything the jury would view as unfavorable to their credibility.

Evidence which is favorable to the accused and material to guilt or punishment must be disclosed to the defendant. *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963). Impeachment evidence as well as exculpatory evidence falls within the *Brady* rule. *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). But the prosecution does not violate its constitutional duty of disclosure unless its omission are of sufficient significance to result in the denial of the defendant's right to a fair trial. *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Regarding impeachment evidence about government witnesses, the United States Supreme Court has instructed "the evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of

---

[14]This is Claim No. 11 in Petitioner's original *pro se* Application. Various forms of this claim are also made in his Amended Application and 3rd Amended Applications.

the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

Michelle Lewis and Lorraine Mitchell were more than witnesses against Petitioner; they were the victims of his crimes. The usual assumption that they were offered inducements to testify against him loses force, therefore, even if Petitioner's theory that they were confidential informants is correct. Petitioner failed to show there was a reasonable probability that had the alleged impeachment evidence about State's witnesses been disclosed, the outcome of his trial would have been different.

Judge Caldwell's summary dismissal of this Petitioner's *pro se* claim for relief based on Petitioner's claim that the State failed to disclose impeaching evidence about its witnesses was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to this claim.

The remainder of Petitioner's *pro se* claims for relief have been carefully reviewed. They are conclusory and without merit. Judge Caldwell's summary dismissal of these *pro se* claims for relief was not contrary to and did not involve an unreasonable application of clearly established federal law. Petitioner's application should be DENIED on its merits as to these claims.

## RECOMMENDATION

Petitioner's habeas corpus claims were adjudicated on the merits after an evidentiary hearing in state court, where he was represented by court-appointed counsel. Petitioner has failed to satisfy his burden of rebutting the presumption of correctness of the state court's adjudication by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state court determination was not contrary to, nor did it involve an unreasonable application of clearly established federal law *(Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)), and was a reasonable determination of the facts in light of the evidence presented in the state habeas proceeding. *See* 28 U.S.C. § 2254(d).

29

Petitioner has failed to make a "substantial showing of the denial of a constitutional right." A certificate of appealability should not be issued in Petitioner's case. 28 U.S.C. § 2253(c)(2). Although 28 U.S.C. § 2253(c)(2) has been found to be "only a modest standard," Petitioner has not shown that "the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement or to proceed further.'" *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (citations omitted).

Therefore, it is respectfully RECOMMENDED to the District Court that:

(1)  Respondent's Request to Dismiss Petition for (Doc. 12) be GRANTED;

(2)  A Certificate of Appealability should not be issued;

(3)  Petitioner's Motions (Docs. 11 and 14) be DENIED as moot; and

(4)  Petitioner's Application for Writ of Habeas Corpus (Doc. 1) be DISMISSED with prejudice.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.

*Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990)

*Nash v. Black,* 781 F.2d 665 (8th Cir. 1986)

Dated this ___8th___ day of August, 2008

BY THE COURT:

John E. Simko
United States Magistrate Judge

30